CERTIFIED TRANSLATION

**Commonwealth of Puerto Rico**
**Court of First Instance**
**San Juan Judicial Center**
**Superior Court**

CARIBE RX SERVICE, INC.,

_____
Name of plaintiff

VS.

GRIFOLS, INC.,
GRIFOLS USA, LLC,
GRIFOLS THERAPEUTICS, INC.
GRIFOLS BIOLOGICALS, INC. and
CARDINAL HEALTH PR 120, INC.

_____
Name of defendant

CASE NO. KPE 2013-2354   907
ROOM NO: _____

CIVIL ACTION FOR: VIOLATION OF LAW NO. 75, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

SUMMONS

UNITED STATES OF AMERICA                    )
PRESIDENT OF THE UNITED STATES        )          SS
COMMONWEALTH OF PUERTO RICO       )

TO:     **GRIFOLS, INC.**
          4101 Research Commons
          79 T.W. Alexander Drive
          Research Triangle Park
          NC 27709                                                                _____
                              (Name of defendant upon whom process is served)

        YOU ARE HEREBY summoned to the court to submit your responsive allegation to the third-party complaint within thirty (30) days of having received this summons, excluding the date of service of process, notifying a copy thereof to the attorney for codefendant/ third party plaintiff.  If you do not submit your responsive allegation within the aforementioned period, the court may issue judgment in default against you, and grant the remedy requested in the third-party complaint or any other remedy if the court, in the exercise of its discretion, deems it appropriate.

Mr. Salvador Antonetti Zequeira, Esq.
Mr. Luis A. Oliver, Esq.
(Name of the attorney for defendant, or of defendant, if it does not have legal representation)
2993
10,764
(Supreme Court number, if attorney)
P.O. Box 363507
San Juan, PR 00936-3507
(address)
787-759-3150 / 787-759-3163; Fax 787-250-7545
(telephone number; fax number)
santonet@fgrlaw.com
loliver@fgrlaw.com
(e-mail)

Issued under my signature and seal of the court today  _April 18, 2013_____.

MS. REBECCA RIVERA TORRES
          Clerk                                                                Date
Eva S. Martinez Rosado
Deputy Clerk [Initials]
Deputy Clerk

[Seal of the court]

I, Juan E. Segarra, USCCI/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
COURT OF FIRST INSTANCE
SUPERIOR COURT OF SAN JUAN

| | |
|---|---|
| Caribe Rx Service Inc.<br><br>PLAINTIFF<br><br>Vs.<br><br>Grifols, Inc.,<br>Grifols USA, LLC<br>Grifols Therapeutics Inc.,<br>Grifols Biologicals, Inc. and<br>Cardinal Health PR 120, Inc.<br><br>DEFENDANTS | CIVIL NO. KPE 2013-2354   907<br><br>MATTER:<br>Violation of Law No. 75, Breach of Contract, Tortious Interference with Contractual Relationship<br><br>[Stamp: SAN JUAN JUDICIAL CENTER 2013 APR 18 PM 4:41] |

VERIFIED COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Caribe Rx Service, Inc. (hereinafter Caribe Rx) through its undersigned attorneys and respectfully states and prays:

THE PARTIES

1.      Caribe Rx is a domestic corporation with its main offices in Rd. #1, Km. 39.9, Barrio Turabo, Caguas, P.R. 00725.  Its mailing address is PO Box 7514, Ponce, PR 00732.

2.      Grifols, Inc. and its affiliates or subsidiaries Grifols, USA LLC, Grifols Therapeutics, Inc., and Grifols Biologicals, Inc. (hereinafter, jointly "Grifols" except when it is necessary to identify one entity in particular) are foreign corporations with its main offices in the state of North Carolina. Grifols's address is:

4101 Research Commons
79 T.W. Alexander Drive
Research Triangle Park
NC 27709

3.      Cardinal Health P.R. 120, Inc. is a domestic corporation with its main offices in San Juan, Puerto Rico.  The address of its registered agent is: CT Corporation System, 361 San Francisco St., San Juan, PR 00901.

FACTS THAT ARE COMMON TO ALL CLAIMS

4.      Caribe Rx is a Puerto Rican company organized in 1997 that distributes medication.  Its principal business is the sale of drugs to hospitals, medical offices and specialized pharmacies, for which it has the required licenses.

CERTIFIED TRANSLATION

5.      As will be stated in greater detail, Caribe Rx represents Grifols brand products exclusively in Puerto Rico.

6.      Caribe Rx does not represent other hemoderivatives that compete with Grifols products.  Caribe Rx has medical promoters who visit specialized doctors, hospitals, and  pharmacies just to promote the therapeutic advantages of Grifols products.

7.      Grifols (Laboratorios Grifols) is a company founded in Barcelona, Spain which has an equivalent subsidiary in the United States (Grifols, Inc.), which acts as parent to the other Grifols companies identified in paragraph 2 above.

8.      Grifols produces hemoderivative products (derived from human plasma) prescribed by hematological-oncological doctors and other specialists, whose products are sold in Europe, Asia, Latin America and North America.

9.      In 2001, Caribe Rx became a distributor of the hemoderivative products of the Alpha Therapeutic Corporation (Alpha) in Puerto Rico and registered the products in the Department of Health, launched them on the market and promoted them in hospitals, infusion centers and specialized pharmacies in Puerto Rico.  Although the contract written with Alpha stated that Caribe Rx was a non-exclusive distributor during the first year it was in effect, Alpha agreed in the same contract to discuss at the end of the first year whether it would name Caribe Rx as exclusive distributor.  Alpha did not contract with any other distributor in Puerto Rico.

10.      In 2003, Grifols acquired Alpha's assets and continued the relationship established between Alpha and Caribe Rx.  Grifols did not hire any other distributor in Puerto Rico and from May 2005 Grifols acknowledged in writing that Caribe Rx was its exclusive distributor in Puerto Rico.

11.      A short time afterward, Grifols launched in the United States the Flebogamma product (an immunoglobuline) and Caribe Rx was in charge of registering and introducing the product in Puerto Rico, including organizing conferences in several hospitals by a Spanish representative of Grifols.  These activities were organized and funded by Caribe Rx.

12.      Grifols repeatedly acknowledged that Caribe Rx is the only company that represents, sells, and distributes Grifols products and certified that Caribe Rx is the only supplier qualified and authorized by Grifols in the Puerto Rico market, despite the fact that the

CERTIFIED TRANSLATION

written contract contained the same clauses as the contract with Alpha regarding non-exclusivity for the first year and the agreement to consider exclusive appointment at the end of the year.

13.     In January 2008, Grifols placed Caribe Rx's exclusivity in the contract.  Although the cover letter related to said contract refers to the "attached Non-Exclusive Agreement," the terms and conditions of the contract establish specifically and clearly that Grifols shall provide the product underlined_exclusively in the territory of Puerto Rico to Caribe Rx ("on an exclusive basis in the Territory of Puerto Rico to Caribe Rx").  Caribe Rx signed the agreement.  This contract also prohibited that Caribe Rx sell products from other competing brands despite the fact that distributors in the United States that sell Grifols products in this market represent and sell other products from brands that directly compete with those of Grifols.

14.     From 2001, Caribe Rx has been the sole distributor of Grifols (formerly Alpha) products and from 2008, Grifols acknowledged said exclusivity in all of the contracts subsequently signed.

15.     In December 2008, Grifols once again certified in writing that Caribe Rx was the only authorized distributor of Grifols products in Puerto Rico ("I hereby certify that Caribe Rx is the only Authorized Distributor of Grifols products in Puerto Rico").

16.     During all of this time (from 2001 to 2011) Caribe Rx was the sole and exclusive distributor of Grifols products in Puerto Rico.  In exchange for said exclusivity, Grifols required that Caribe Rx not represent competing hemoderivative products.  Caribe Rx always complied with said requirement.

17.     During all of this time, Caribe Rx dedicated all of its resources and efforts to promoting Grifols products in Puerto Rico.  Caribe Rx registered all Grifols products in the Department of Health so that they could be sold on the island, in accordance with the laws of Puerto Rico.  It hired medical representatives to solely and exclusively promote Grifols products.  It represented, marketed and sold Grifols products in hospitals, specialized pharmacies and infusion centers.

18.     Caribe Rx's efforts produced extraordinary benefits for Grifols, to the extent that the volume of sale of Grifols products in Puerto Rico reached substantial sums, even faced with the competition from multinational pharmaceuticals established in Puerto Rico, such as Baxter and Bayer.  For example, the volume of sales of Grifols products

CERTIFIED TRANSLATION

by Caribe Rx increased from $2.3 million in 2003 to $4.1 million in 2008.  In the past 5 years, Caribe Rx has sold close to 14.5 million dollars of Grifols products in Puerto Rico.

<u>TALECRIS</u>

19.     In June 2010, Caribe Rx received from Grifols a letter in which said company announced its intention to acquire one of its competitors, Talecris Biotherapeutics, a United States company that produced therapy medication based on plasma proteins.  Some of these products are similar to those produced by Grifols and competed with these in the Puerto Rico market.

20.     After this announcement, the president of Grifols in the United States notified Caribe Rx of the extraordinary opportunities that the new Talecris products offered Caribe Rx in the Puerto Rico market.  Grifols originally had five products[1] and the acquisition of Talecris would add ten additional products[2], each one with multiple dosages.

21.     In October 2010, a Grifols executive visited Caribe Rx.  During this visit, Caribe Rx submitted its performance, its plans, its strategy and the possibility of growth of the products in Puerto Rico.  Upon request of this executive, it provided a copy of the presentation so that it could be sent to Grifols's main offices in the United States.

22.     There was no doubt that Caribe Rx would distribute the products originating in the Talecris acquisition in an exclusive manner.  Therefore, upon request of Grifols, Caribe Rx took measures and obtained letters from several hospitals in Puerto Rico addressed to the Federal Trade Commission (FTC) to recommend approval of the acquisition of Talecris by Grifols, since that transaction required approval of Federal regulators.  Caribe Rx was the only company in Puerto Rico who carried out these steps.

23.     In May 2011, the president and vice-president of Caribe Rx had a teleconference with Grifols executives during which they informed them that the transaction with Talecris was about to be completed, that Talecris products would become a part of the Grifols line and that they would be available exclusively to Caribe Rx as soon as the consolidation of the operations of the two companies concluded.

---

[1] Albutein, Alphanate, Alphanine, Profilnine, and Flebogamma.

[2] Gamunex-C, Plasmubin, GamaSTAN, HyperHep B, HyperRab, HyperRhoD, HyperTet, Plasmanate, Thrombate III and PROLASTIN.

CERTIFIED TRANSLATION

24.     Grifols informed Caribe Rx that when the consolidation was complete, it would start distributing the new Grifols (formerly Talecris) products exclusively in Puerto Rico as it had done until that moment.

25.     The Grifols and Caribe Rx relationship was close; to the extent that Grifols, during a meeting in Barcelona, seemed inclined to grant Caribe Rx exclusivity in the distribution of its products in other Caribbean countries when the consolidation with Talecris was complete.

26.     In June 2011, the upper management of Grifols in Barcelona wrote to Caribe Rx to announce the conclusion of the Talecris acquisition and that shortly thereafter Grifols team members would coordinate a meeting.

27.     As a result of that transaction, Grifols currently markets products that were formerly from Talecris under the Grifols brand.

28.     In August of 2011, Grifols announced the new management of its operations in North America. Almost all of the people came from the former Talecris.  None of the persons appointed to work with the Puerto Rico market knew or had had contact with Caribe Rx.

29.     In December of 2011, Caribe Rx sought and obtained a meeting in New Orleans, Louisiana with the new management of Grifols in which Caribe Rx made a presentation.  This is the meeting in which the new upper management for Grifols became aware of Caribe Rx's exclusivity relationship with Grifols.

30.     During the presentation, the new managers of Grifols in the United States seemed surprised when they learned that Caribe Rx had an exclusive distribution contract, since this had not been Talecris's practice.  They were also surprised to learn about the meeting between Caribe Rx and Grifols in Spain, since some of them had never been to Barcelona or met the executives of their parent company.

31.     In January of 2012 Caribe Rx learned and Grifols confirmed that another distributor in Puerto Rico, Cesar Castillo, Inc., ("Castillo") was distributing all of the Grifols product line.

32.     Castillo formerly had distribution in Puerto Rico of Talecris products, although he also distributed products of Talecris competitors, such as Baxter and CSL Behring.

CERTIFIED TRANSLATION

33.     Caribe Rx immediately wrote to Grifols, requesting an urgent meeting to protect Grifols's exclusive representation in Puerto Rico.

34.     Caribe Rx also wrote to Castillo, requesting that he cease and desist selling Grifols products due to the exclusive relationship that Caribe Rx has with Grifols.

35.     Castillo ordered removing Grifols products from his system and immediately ceased selling them.

36.     In February 2012, Caribe Rx's managers attended a meeting scheduled by Grifols in its new offices in North Carolina, the former offices of Talecris.   During that meeting, Caribe Rx made a third presentation as to its performance as exclusive representatives of Grifols products in Puerto Rico, its plans and strategies for the future.

37.     At the end of the meeting, Grifols executives congratulated Caribe Rx for their excellent work and said they would continue with Caribe Rx as exclusive distributor.   They stated that the only obstacle was temporary, and it had to do with some contracts that Grifols had with distributors in the United States of the former company, Talecris, which did not exclude the Puerto Rico market as a sales territory.   They clarified that they would solve the problem once the respective contracts expired, and that the territory of Puerto Rico would be eliminated from them in order to achieve the full transition to Caribe Rx.

38.     Caribe Rx notified Grifols that Atlantic Biologicals, a United States pharmaceutical company offered Grifols products on its webpage and offered them to clients in Puerto Rico.   Grifols responded that they would correct the situation and indeed they did, protecting Caribe Rx's exclusivity.

39.     As a part of the transition plan to guarantee Caribe Rx's exclusivity, a Grifols executive traveled to Puerto Rico and met with Castillo to announce that from that point on he would not be able to sell Grifols products, including the ones that were formerly of the Talecris brand.

40.     In March 2012, Grifols sent a draft of the contract that reflected Caribe Rx's exclusivity for distribution of products that were originally from Grifols but not the agreement that products that were formerly from "Talecris" and now were from Grifols would also be exclusive to Caribe Rx.

41.     On March 16, 2012, Caribe Rx wrote to Grifols pointing out the omission of the products that were formerly from the Talecris brand and which were guaranteed as exclusive

6

CERTIFIED TRANSLATION

to Caribe Rx once the contracts with United States distributors which did not exclude Puerto Rico from their scope expired.  Grifols did not deny this agreement.

42.    Then an exchange of letters, e-mails, and calls was initiated regarding the way to make the transition.  Grifols reiterated that once the contracts of the former Talecris company with its distributors in the United States expired- which would be, at the latest, on December 31, 2012- they would be amended to eliminate Puerto Rico from their territory and thus guarantee exclusivity for Caribe Rx.  Although Caribe Rx expressed in writing to Grifols that it wished to put this transition process in writing ("we agreed that… you would prepare a transition plan…"), Grifols preferred that the transition plan not be put in writing, in light of the other contracts that were in effect.

43.    Based on said preference, in April 2012, Grifols sent a revised contract, effective April 1, 2012, that also did not mention the transition plan.  Caribe Rx signed it in light of fact that the prior exclusivity agreement as to the products of the extinct Talecris would be formalized in writing once the contracts with the United States distributors expired on December 31, 2012.

44.    During the rest of 2012, Grifols and Caribe Rx acted according to the exclusivity agreement.  Among other things:

      a.     Grifols terminated its relationship with Castillo;

      b.     Grifols sent a medical representative to Puerto Rico to train a Caribe Rx representative regarding Gamunex-C products and Hyperglobulines, products that came from the disappeared Talecris.

      c.     Grifols requested that Caribe Rx coordinate an activity at the Ritz Carlton Hotel to present the Gamunex-C product to neurological doctors, which Caribe Rx did.  No other distributor besides Caribe Rx participated.

      d.     Per Grifols's instructions Caribe Rx's medical representative promoted Gamunex-C (originally a Talecris product) and not Flebogamma (a product that was originally from Grifols).

      e.     Grifols notified Caribe Rx that Gamunex-C would substitute Flebogamma since it had more therapeutic use and its manufacturing cost was lower.  In fact, Grifols has a webpage that is exclusively

CERTIFIED TRANSLATION

geared towards promoting Gamunex-C (www.gamunex-c.com) and it does not have one to promote Flebogamma.

    f.    Caribe Rx, along with a medical representative from Grifols, set up a booth in conventions for hospitals and neurologists in Puerto Rico to promote Gamunex-C and other Grifols products.

45.    in January 2013, Grifols did not send a contract according to the agreed upon terms rather simply a notice of renewal of contract from April 2012.

46.    Caribe Rx then wrote to Grifols reminding it of the agreement regarding the transition and the exclusivity agreement from January 2013 for Grifols products that formerly were from Talecris, wherefore it requested that it be put in writing.  Grifols did not deny this agreement.

<u>CARDINAL HEALTH</u>

47.    Cardinal Health PR 120, Inc. is a subsidiary or affiliate of an enormous multinational corporation. In Puerto Rico it acquired what was formerly the important drug company Borschow Hospital and Medical Supplies Inc.  Additionally, it has contracted with several of the large hospitals in Puerto Rico, either directly or through one of its corporations, to supply them all of their pharmacy products.

48.    Besides Grifols products, Cardinal distributes products that compete with Grifols products, such as Baxter, Bayer and CSL Behring products.

49.    In January 2013, Caribe Rx wrote to Cardinal Health PR 120, Inc. ("Cardinal") informing it that Caribe Rx has exclusivity on distribution of all Grifols products in Puerto Rico.

50.    Then, in a meeting on February 2013, Cardinal executives said to Caribe Rx that they understood that Caribe Rx did not have exclusivity on Grifols products that were formerly Talecris products, rather only as to Grifols products that did not come from Talecris.  In response, Caribe Rx reiterated its exclusivity as to all Grifols products independent of their origin.

51.    Caribe Rx informed Grifols in writing regarding the conversation with Cardinal and requested a letter from Grifols to clarify the situation, since Cardinal was announcing Grifols products in its catalogue for sale in Puerto Rico.  Caribe Rx once again reiterated the exclusivity agreement as to products that came from the disappeared Talecris company.  Grifols did not deny this agreement.

CERTIFIED TRANSLATION

52.    In March of 2013, Joel Abelson from Caribe Rx sent Caribe RX an e-mail to schedule a teleconference as to both matters.

53.    During the teleconference, Joel Abelson informed Caribe for the first time that Grifols would not cancel its contract with Cardinal and that therefore it would not honor Caribe Rx's exclusivity as to the products that were formerly from Talecris.

54.    Cardinal sells Grifols products in Puerto Rico, including the ones that were formerly from Talecris and the ones that were originally from Grifols.

<div align="center">INJURIES</div>

55.    The acts and omissions of Grifols and Cardinal have caused injuries to Caribe Rx, among other reasons:

    i.    because they deprive Caribe Rx of exclusivity in representation in Puerto Rico of Grifols products, which they have a contractual right to represent exclusively and for which they have cultivated recognition and prestige in the Puerto Rican market through the years ;

    ii.    because Grifols has announced that it would substitute the original Grifols product that sells the most (Flebogamma) with the Gamunex C product, from Talecris.  Contrary to what was agreed, Grifols sells Gamunex C to Cardinal in Puerto Rico;

    iii.    because Caribe Rx is barred from selling products that compete with Grifols products, while Cardinal does not have that limitation;

    iv.    because Caribe Rx's promoters promote the sale of Grifols while Cardinal, without investing in promotion for the products, benefits from the efforts and expenses that Caribe Rx has incurred in and continues to for the benefit of the Grifols brand.

<div align="center">FIRST CLAIM AGAINST GRIFOLS</div>

<div align="center">LAW No. 75 – INJUNCTION</div>

56.    Statements 1 through 55 are reiterated and incorporate herein.

57.    The relationship between Grifols and Caribe Rx is protected by Law No. 75 from 1964, 10 L.P.R.A.§278 et sec.

58.    Grifols's actions, allowing Cardinal and others to distribute their products in Puerto Rico undermine the exclusivity relationship that Caribe Rx has in violation of Law no. 75.

CERTIFIED TRANSLATION

59.     Caribe Rx is entitled to have this Honorable Court order Grifols, during the pendency of the proceedings, to respect and protect Caribe Rx's rights and therefore, to cease and desist selling Cardinal and Grifols products for resale in Puerto Rico to other distributors and to abstain from carrying out any act or omission in detriment to the relationship.  Art. 3-A of Law No. 75, 10 L.P.R.A. §278b-1.

<u>SECOND CLAIM AGAINST GRIFOLS</u>

<u>ACT No. 75 – TORTS</u>

60.     Statements 1 through 59, above, are reiterated and incorporated herein.

61.     The actions and omissions of Grifols in detriment to the relationship with Caribe Rx and in violation of Law No. 75 have caused and will cause harm to Caribe Rx which consists, among others, of harm to its commercial reputation, impairment of goodwill, and loss of past and future income.

62.     Current and future harm suffered by Caribe Rx is difficult to calculate at this time, but they are estimated in an amount not lesser than four million dollars ($4,000,000).

<u>THIRD CLAIM AGAINST GRIFOLS</u>

<u>HARM FROM BREACH OF CONTRACT</u>

63.     Statements 1 through 62, above, are reiterated and incorporated herein.

64.     Grifols's actions and omissions are a breach of contract.

65.     Grifols's actions and omissions have caused harm to Caribe Rx which consists, among others, of harm to its commercial reputation, impairment of goodwill, and loss of past and future income.

66.     Past and future harm caused by Caribe Rx are estimated in an amount not lesser than four million ($4,000,000).

<u>FOURTH CLAIM AGAINST CARDINAL</u>

<u>TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP</u>

67.     Statements 1 through 66, above, are reiterated and incorporated herein.

68.     The actions and omissions of Cardinal in not ceasing to sell Grifols's products in Puerto Rico, despite having been warned of the relationship protected by Law No. 75 constitute tortious interference with the contractual relationship between Grifols and Caribe Rx.

69.     Cardinal's tortious interference has caused and will cause harm to Caribe Rx.

70.     The harm that the tortious interference has caused and will cause Caribe Rx is estimated in an amount not lesser than four million dollars ($4,000,000).

CERTIFIED TRANSLATION

<u>PRAYER</u>

In light of what is stated and alleged herein, Caribe Rx requests from this Honorable Court that it find in in its favor in this complaint and consequently that it issue judgment:

1.      As to the first claim, ordering Grifols to cease and desist selling to Cardinal and other distributors Grifols's products for resale in Puerto Rico and to abstain from carrying out any action or omission in detriment to the exclusivity relationship by Caribe Rx;

2.      As to the second claim, ordering Grifols to pay Caribe Rx an amount to repair the harm caused and to be caused, estimated at not less than four million dollars ($4,000,000);

3.      As to the third claim, ordering Grifols to pay Caribe Rx an amount to repair the harm caused and to be caused, estimated at no less than four million dollars ($4,000,000);

4.      As to the fourth claim, ordering Cardinal to pay Caribe Rx an amount to repair the harm caused, estimated at no less than four million dollars ($4,000,000);

5.      As to all claims, Caribe Rx requests that defendants be ordered to pay Caribe Rx attorney's fees in light of the frivolousness of defendant corporations.

Caribe Rx also requests from this Honorable Court that it grant it any other legally-appropriate remedy.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on April <u>18</u>, 2013.

<div style="margin-left:40%">

**FIDDLER, GONZALEZ, & RODRIGUEZ, P.S.C.**
Attorneys for Caribe Rx Service, Inc.
P.O. Box 363507
San Juan, Puerto Rico, 00936-3507
Tel. (787) 759-3150 / (787) 759-3163
Fax: (787) 250-7545
[signature]
SALVADOR ANTONETTI ZEQUEIRA
RUA No. 2993
santonet@fgrlaw.com
[signature]
LUIS A. OLIVER
RUA No. 10,764
loliver@fgrlaw.com

</div>

CERTIFIED TRANSLATION

<u>OATH</u>

I, Rafael Emmanuelli, of legal age, married, attorney and resident of Ponce, Puerto Rico, declare under oath that I am Vice President of Caribe Rx Service Inc., that I have read all of the factual statements made in the above complaint, and I certify that they are true, that I have personal knowledge thereof, except for what is stated based on information and belief.  As to the latter, I believe in good faith that they are true having read information related thereto from reliable sources.

In San Juan, Puerto Rico, on *April 18*, 2013.

[signature]_____

RAFAEL EMMANUELLI

Aff. No. <u>186</u>

Sworn and signed before me by Rafael Emmanuelli, of the aforementioned personal background, whom I know personally, today *April 18*, 2013.

[signature]_____

NOTARY PUBLIC

[Notary's seal and mark]

[stamp receipt]

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SAN JUAN JUDICIAL CENTER
SUPERIOR COURT

| | |
|---|---|
| CARIBE RX SERVICE, INC., | CIVIL NO. KPE 2013-2354 |
| | ROOM 907 |
|      Plaintiff | |
| | MATTER: |
| Vs. | |
| | VIOLATION OF LAW NO. 75, |
| GRIFOLS, INC.; GRIFOLS USA, LLC; GRIFOLS | BREACH OF CONTRACT, |
| THERAPEUTICS INC.; GRIFOLS BIOLOGICALS, | TORTIOUS INTERFERENCE WITH CONTRACTUAL |
| INC. AND CARDINAL HEALTH PR 120, INC., | RELATIONSHIP |
| | |
|      Defendants | |

ORDER AND CITATION

Having examined the "Verified Complaint" and the "Motion requesting temporary remedy" filed on April 2013, this Court schedules a hearing to consider the appropriateness of the injunctive relief sought under Article 3-A of Law No. 75-1964, as amended.  The hearing will be held in room 907, on **Tuesday, May 28, 2013 at 9:30 a.m.**

The parties to the litigation shall appear prepared for the following:

1.     To state, in a brief and accurate manner, the relevant facts on which your reason for requesting, denying or intervening is based.  All participants will work together to identify the facts that are central to this controversy.

2.     To formalize factual stipulations, announcing witnesses and documentary evidence to be offered and examining the possibility of reaching an agreement.  To that end, each attorney should have authorization from its client or, short of that, the latter should be present that day or be available via telephone communication with its attorney from the Court.

3.     To discuss their legal theory.

If there are controverted facts, the parties to the litigation should appear prepared to carry out, on that same date, an evidentiary hearing to determine whether to issue the requested injunctive relief.

Plaintiff shall notify this Order personally, along with a copy of the complaint and summons, and of the "Motion Requesting Temporary Relief" in accordance with Rule 4.4 of Civil Procedure of 2009, **on or before**

[Court seal and initials on left hand margin]

**May 2013, at 5:00 p.m.**  Additionally, plaintiff shall have until **May 17, 2013, at 5:00 p.m.,** to demonstrate personal service to this Court, as provided in this Order.

Defendant is advised that, if it does not appear to the scheduled hearing, this Court shall consider its failure to appear as an acceptance of the facts alleged in the complaint and the remedy requested, and this Court shall be able to issue the corresponding judgment, which may include an injunctive order, without further citations or consideration of its arguments, if it is legally appropriate.

Defendant is advised that, if it appears with an attorney, prior to the hearing, it must formalize its legal representation via a motion to that effect.

NOTIFY.

In San Juan, Puerto Rico, on April 19, 2013.


[signature]

GISELLE ROMERO GARCIA

SUPERIOR JUDGE


CERTIFY:
Ms. Rebecca Rivera Torres
Regional Clerk
VANESSA NIEVES MORALES
By:    [signature]
        Assistant Clerk


[Court seal]

COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
COURT OF FIRST INSTANCE
SUPERIOR COURT OF SAN JUAN

Caribe Rx Service Inc.

    PLAINTIFF

    Vs.

Grifols, Inc.,
Grifols USA, LLC
Grifols Therapeutics Inc.,
Grifols Biologicals, Inc. and
Cardinal Health PR 120, Inc.

    DEFENDANTS

CIVIL NO. KPE 2013-2354   907

MATTER:
Violation of Law No. 75, Breach of Contract, Tortious Interference with Contractual Relationship

[Stamp: SAN JUAN JUDICIAL CENTER 2013 APR 18 PM 4:41]

MOTION REQUESTING TEMPORARY RELIEF

TO THE HONORABLE COURT:

COMES NOW Caribe Rx Service, Inc. (hereinafter Caribe Rx) through its undersigned attorneys and respectfully states and prays:

1.    Caribe Rx has filed a verified complaint today which states, among other things, violations by Grifols, Inc. and its affiliates or subsidiaries Grifols, USA LLC, Grifols Biologicals, Inc.; and Grifols Therapeutics, Inc. (hereinafter, together "Grifols") of the law that protects distributors in Puerto Rico, Law No. 75 enacted on June 24, 1964, 10 L.P.R.A. §278 et seq.

2.    In accordance with Article 3-A of this statute, 10 L.P.R.A. §278b-1, Caribe Rx has stated facts that demonstrate that Grifols has undermined and threatens to continue undermining the relationship established between the parties.

3.    Therefore, this Honorable Court may grant Caribe Rx "any temporary relief or injunctive relief to do or refrain from doing, ordering any of the parties or both to continue, in all of its terms, the relationship established through the distribution contract and/or abstain from carrying out any action or omission in detriment thereto." Ibid.

4.    By legislative mandate, the statute, "since it is remedial, should be interpreted liberally for the most effective protection of said rights." Art. 4.

5.    Caribe Rx has the right to have this Honorable Court order Grifols to protect and respect Caribe Rx's rights.

6.      Caribe Rx requests that the appropriate hearing be scheduled for a date after May 15, 2013, since Caribe Rx has to serve process (and the order scheduling the corresponding hearing) to several parties outside of Puerto Rico.

WHEREFORE, this Honorable Court is requested to, after relevant measures, order Grifols to cease and desist from selling its products for resale in Puerto Rico to Cardinal Health PR 120, Inc. and other distributors and that it refrain from carrying out any action or omission in detriment to the relationship.

In harmony with the above, Caribe Rx requests from this Honorable Court that it immediately issue an order scheduling a hearing regarding the granting of the requested temporary relief and establishing a period to notify the adverse party.  A draft of the order is attached.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on April _18_, 2013.

**FIDDLER, GONZALEZ, & RODRIGUEZ, P.S.C.**
Attorneys for Caribe Rx Service, Inc.
P.O. Box 363507
San Juan, Puerto Rico, 00936-3507
Tel. (787) 759-3150 / (787) 759-3163
Fax: (787) 250-7545
[signature]
SALVADOR ANTONETTI ZEQUEIRA
RUA No. 2993
santonet@fgrlaw.com
[signature]
LUIS A. OLIVER
RUA No. 10,764
loliver@fgrlaw.com

2

COMMONWEALTH OF PUERTO RICO
GENERAL COURT OF JUSTICE
COURT OF FIRST INSTANCE
SUPERIOR COURT OF SAN JUAN

Caribe Rx Service Inc.

    PLAINTIFF

    Vs.

Grifols, Inc.,
Grifols USA, LLC
Grifols Therapeutics Inc.,
Grifols Biologicals, Inc. and
Cardinal Health PR 120, Inc.

    DEFENDANTS

CIVIL NO.

MATTER:
Violation of Law No. 75, Breach of Contract, Tortious Interference with Contractual Relationship

ORDER

Having considered the Motion Requesting Temporary Relief Under Article 3-A of Law No. 75 enacted on January 24, 1964 filed by Caribe Rx Service, Inc., and the Verified Complaint filed by said party, a hearing regarding said request is hereby scheduled in this Courtroom for _____, 2013, starting at _____ a.m.   Movant shall notify respondent by delivering, on or before _____, 2013, a copy of this Order, the Verified Complaint and the Motion Requesting Temporary Relief.  Since corporations are involved, respondent parties shall be notified by delivery to an officer, administrative manager, general agent or any other agent authorized by appointment or designated by law to receive process.

The parties shall attend prepared to submit documentary evidence and witnesses in support of their request or defense, as the case may be.  The parties shall attend prepared to support the reasons to grant or deny the temporary relief in light of the provisions of the above-cited Law No. 75 and, in a supplementary fashion, Rule 57.3 of Civil Procedure of Puerto Rico.

Issued in San Juan, Puerto Rico, today _____, 2013.

REGISTER AND NOTIFY.

_____
SUPERIOR JUDGE